Good morning, your honors. Mark Greenberg for appellant Derrick Lakey. I would love to be spending my time talking about Bowie v. Columbia, but I guess I'll be saying a little bit about etpatoling, on which actually I'm the appellee, as it were. You get the first speech telling you how poor the acoustics are in this room, and that machine there works best if you forget it and try to talk all the way to us. They're bad acoustics, and all the lawyers now, they know they have to speak up. I was pick on the first person, so go right ahead. All right. Well, as I said, I was going to talk about etpatoling. Our position on statutory toling has been set forth in the brief, and I wanted to emphasize certain points about the argument for equitable toling. Now, most of Mr. Lakey's activity in the California courts was before PACE was decided. Now, the attorney general has argued that if Mr. Lakey is entitled to equitable toling, because he was operating under the law pre-PACE, he's entitled to it only up to, I think it's April 26, 2005, when PACE appeared. What I didn't say in the brief, and I think it should be emphasized, is the crucial date really should be the appearance of Bonner when this court decided how PACE applies to California law. Because when PACE came out, it wasn't immediately apparent how it applies to California's system of habeas corpus. The famous remark in PACE, well, supposedly the illuminating remark in PACE, is that time limits in whatever form are conditions of filing. But PACE didn't purport, for example, to overrule Artoos v. Bennett. Now, what was the bar in Artoos v. Bennett? The bar in Artoos v. Bennett was an issue that could have been raised on appeal but wasn't, was raised later in some sort of post-appellate proceeding. Well, he – the PACE problem called to his attention as a problem, and he waited 141 days until after PACE before filing, correct? Correct. So if we're going to require diligence, are you going to argue that that's diligent? Well, it's diligent because the law is still in a flux. Well, we had a lot of people filing as soon as PACE came out, some even before PACE came out. Well, but Mr. Lakey assumes just because the statement in PACE doesn't illuminate what the application of PACE is to the California system, Mr. Lakey is still operating under the assumption that he has a properly filed habeas petition. Now, Bonner – If it was in flux or in confusion, I suppose that's why the people do it. They file because they're better off with something filed than not filed. The 141 days is what bothers me when PACE has come out, and how can we say that's diligent? Well, because it looks – when PACE comes out, it's certainly a valid interpretation that Artoos v. Bennett still describes the California system. As I say, the bar in Artoos v. Bennett was that it was an issue that could have been raised on direct appeal but was delayed until some sort of post-appellate procedure. Now, why isn't that a time limit in another form? That certainly could be interpreted as a time limit in another form, and that PACE should have, therefore, overruled Artoos v. Bennett, but it didn't. Therefore, this statement, time limits in any form as a condition of filing, has some sort of limit. Now, California, what you're dealing with is there's no time limits. The normal understanding of the word time limit is something that's measured against the calendar. At least in non-capital habeas in California, there is no measure against the calendar at all. It's completely free-flowing discretion in the court. It looks very much like an Artoos-type bar when you get this Clark Robbins denial. So what I'm saying is that 147 days really doesn't solve, isn't really crucial. What is crucial is October of 2005 when Bonner appears, and Bonner states that PACE does apply to the California system. Wrongly, I think, but that's what Bonner said. Let me go back for a second to make sure I understand your argument. If I understand your brief on statutory tolling, and I hear what you haven't addressed   Do you agree that as of December 22, 2004, that 352 days of the limitation period had run? I believe that's right. So you're not relying on statutory tolling, on interval tolling? Not interval tolling. I make a distinction between interval tolling and tolling for pending petitions. So you're not relying on interval tolling in this case? No. It's the 267 days. I just want to make sure that's clear. Correct. Correct. And the argument is that Bonner was not correctly decided. I mean, this Court's decision in Ramirez v. Yates, where it talks about due diligence in quorum nobis being something essentially different from the substantial delay requirements in habeas, it doesn't hold up. The California Supreme Court perceives no difference between quorum nobis and habeas. If Ramirez v. Yates is right, then Bonner is wrong. Even though Ramirez v. Yates distinguishes Bonner as dealing with habeas, it's strictly a formal distinction. There's no substantive difference between the due diligence requirement in quorum nobis and the requirement that a habeas be prosecuted without substantial delay. But going back to the equitable tolling, again, it seems to me PACE, you know, does not illuminate the California system. That statement is time limits in any form. Our conditions of filing simply do not, because one could characterize the R2s bar as a time limit in some other form. But R2s is not overruled. So obviously the question is, is all forms of timeliness a time limit? Right. I think that, you know, the difficulty with your PACE argument, it seems to me, is that, as Judge Wallace has pointed out, we have — there were people who filed almost immediately. And the idea, after PACE came out, and the idea of equitable tolling is that you — there are circumstances that prevent filing. So I think you have a tough argument. Well, I don't know if the people who filed had attorneys and representation. The point is PACE could have jumped either way to require a pro per defendant to even actually come close to figuring these technicalities out. And these are as close to real technicalities as I've ever seen in the law, is — seems to me — seems to be demanding too much. The situation, the legal situation is extraordinary. And I think it's the legal situation that should set Bonner as the benchmark in this case rather than the appearance of PACE, and that Mr. Lakey, if he gets equitable tolling, should be entitled to equitable tolling up through the appearance of Bonner. Well, he doesn't need it through the appearance of Bonner because he filed about three weeks before Bonner appeared, once he got representation. Right. I mean, the key seems to me, if he'd had a lawyer — even though, I mean, this is a very technical area of the law, he probably would have filed earlier. And the question for us is, then, does that rise to the level of something that should invoke equitable tolling or not? Well, as I say, I mean, it's — I really do think this sort of interaction between the rules of EBIT tolling and the California system really is an extraordinary legal situation. Right. But, I mean, that's sort of subtle to Saffold, and it's progeny. I mean, we had in the University of Scalasia where we said just, you know, California Supreme Court says you're done, but that's, you know, that's by the boards now. Well, it's — but that's the thing. Everything seems to be capable of going by the boards at any time. It becomes an almost impossible — it's a difficult situation for attorneys, let alone pro per. Do you want to talk about Bowie? Bowie, I just want to emphasize that the problem that McSherry presents is not — I want to emphasize that we're not dealing with the law of a circuit problem here with McSherry. What we're dealing with is the use of the substantive principle and reasoning in McSherry as it — is it under a reasonable application of California Supreme Court law. It seems to me there's no question that the McSherry principle is not. It can't be upheld under Bowie itself, which invoked the ex post facto clause of the Constitution as the model for the due process right under Bowie. But when you get subsequent cases like Rogers v. Tennessee, United States v. Lanier, where the United States Supreme Court certainly had an opportunity to dispose of those cases based on this McSherry v. Block principle, that it only applies to innocent activity that becomes criminalized, they didn't. It was a foreseeability analysis. Now, whether activity is innocent and then is criminalized may affect the consideration of foreseeability. But it sure — sure is not dispositive under Bowie. So it seems to me there's really no question that the magistrate and the district court were correct, that this change in California law, this expansion of aiding and abetting liability, was clearly unforeseeable. The principle that the aider and abetter cannot be liable for a crime greater than that committed by the direct perpetrator was virtually boilerplate in the cases. The McCoy decision came out of nowhere, and it came out of nowhere. It was not just in Mr. Lakey's case. It wasn't just a change in the law that governed his trial. It was a change in the law that occurred after his trial. The law of the case in his trial itself was the old law. So I think you have an extremely serious Bowie violation, and for the reasons set forth in the brief, I think it is reversible per se. Thank you, Counsel. We'll hear from the government. Good morning. May it please the Court. Justin Riley on behalf of the Warden. I'll start with the timeliness argument as well. It's been a long time coming. Basically, the district court, after a pretty thorough analysis by the magistrate, threw up its hands and said, this stuff's complicated. I'm out of here. So... I don't see that in his decision. In his order, he very briefly... Somehow throwing up the hands. I just don't see that. He says... Maybe I'm missing it. He says on... He did. He just... The findings in rec, we understand. Yes. So... And I'd like to address two things I raised in my brief. I said that there may not be equitable tolling. Turns out there is. And also... Can you move into that, Mike? Yes, I'm sorry. And also, I suggested that there may not be statutory tolling for a second round, and this Court has issued authority that indicates that there might be. Those were alternative arguments, though, and do not affect the timeliness analysis in my brief. As for equitable tolling, assuming that appellant is operating under Harris v. Carter theory, that Pace v. DiGuglielmo changed the law in such a drastic way, and it did, Pace is the case that should have prompted appellant to run to the courthouse. And the language in Pace was unambiguous. Time limits, no matter their form, are filing conditions. The end of the matter. Protective petition. These are all quotes from Pace that should have prompted appellant to get right to federal court. Well, your opponent says, wait a minute, this was an entirely new law, and things were in flux. I don't know quite what that means. We're in flux in the California system, so there should be some delay. And I assume the assumption is 141 days of delay. What's your response to the flux argument in the California system as being an excuse that allows equitable tolling to continue? There was no flux after Pace. This language is completely unambiguous. End of the matter. Time limits, no matter their form. And the indication that if you're worried about time limits at all, file a protective petition. Appellant makes some argument that says, you know what, I didn't have an attorney when Pace came out. It was all very confusing to me. And despite this unambiguous language, he could not understand on his own that he had to get right to federal court. Yet, curiously, on his own, he deciphered Ninth Circuit law, with all due respect, and the pretty confusing way in which it was set forth in California time limits. But Pace, unambiguously again, time limits no matter their form. End of the matter. And protective petition. And somehow that's very confusing to him. And I couldn't be diligent based on that language. I think it's appropriate. I mean, he may be a very skilled and talented pro se litigator, but he's still pro se. Sure. If he can understand the Ninth Circuit's. But I mean, so how is he, you know, you've got the limitations of you've got to get Pace decided, and it goes through the period of rehearing, and it comes down. I mean, in the real world, he's got a pretty good argument. Drawing a line like that, though, would allow pro perpetitioners to have equitable tolling if they were confused at all about anything. It can't be more clear than this. The United States Supreme Court comes out with this very strong language. End of the matter. You don't get to come to federal court. I can't imagine stronger language than that from the United States Supreme Court on equitable tolling. I'm sorry, statutory tolling. So how do you distinguish this from Harris? How do you distinguish this from Harris? Absolutely. The petitioner in Harris was diligent because when Pace came out, he talked to his attorney. He said, hey, have you filed my petition? Is the federal petition on file? Immediately, I think the very day in the Harris versus Carter opinion, it was cited. The very day he found out his federal petition was not on file, he did it himself the very day. Here, the petitioner or the appellant waited 140-something days to file his petition, five months, a little over five months after Pace came down. And it wasn't Bonner v. Cary that prompted him because he filed before Bonner v. Cary. And he filed while his California Supreme Court petition was still pending. He didn't know that the California Supreme Court had denied it as untimely. He didn't even know that the California Supreme Court had actually denied his petition. He ran straight to federal court after he got his attorney. So all of those things show that the petitioner was not being diligent. As to the pending, statutory tolling as it pertains to pending, both this Court and the United States Supreme Court have been painstakingly clear about time limits no matter their form are filing conditions. And now, appellant relies on Ramirez v. Yates, a recent case from this circuit that talks about a writ of error quorum nobis in AEDPA tolling, statutory tolling. The Court in Ramirez v. Yates specifically distinguished Bonner using this language. Bonner does not apply here because that case turned on California rules for filing habeas corpus and not quorum nobis petitions. The California Court applied a different standard from that in Bonner, a different standard. The Ramirez Court was operating under the presumption that the filing the time limit for a writ of error quorum nobis was different, a different standard than a filing of, I'm sorry, a timeliness condition for filing a writ of habeas corpus. So the correct analysis of that case is not to say, oh, because California said the writ of error quorum nobis and the writ of habeas corpus are the same with regard to filing limits, then that means that we should throw out Bonner completely. No, it just means that the Ramirez Court was operating under a faulty presumption. Unless there are any other questions on tolling, I'd like to move to the retroactivity argument. The clearly established Supreme Court precedent in this issue is Rogers v. Tennessee, not only because it's one of the latest Supreme Court decisions on the matter, but also because it's the only case that has been cited by the briefs that involves a judicial – a possible and alleged judicial enlargement of common law doctrine. And now the other cases thus far had been analyzing judicial enlargement of statutory language. And the – excuse me – the Rogers v. Tennessee court distinguished judicial enlargement of statutory language and said that the judicial enlargement of common law doctrine should not be analyzed under ex post facto analysis because in progressing the common law, courts should be free to clarify, quote, clarify, reevaluate, and the common law presupposes evolution. It allows for the courts to bring into conformity the common law with logic and common sense. Now, there are four things that happened in our case. But when you change the elements of a crime, that's a pretty substantive change. If you change the elements of a crime, that's true. There are four things that happened in our case that made the California Supreme Court opinion in our case foreseeable. First of all, the language of the rule. And this is important because I didn't specifically refer to this in my brief. But the rule in California, and I quote, That's the entire rule. The same trial upon the same evidence. Now, as far back as 1939, the California courts were indicating that if there were different evidence in the same trial, then the rule may not apply. In that case, it's People v. Blackwood. There's an excerpt of People v. Blackwood in Appellant's reply brief at page 14 to 15. And what People v. Blackwood said, and I quote, Also, in People v. Williams, 1970, 40 years later, you'll remember that this case had to do with an innocent, a relatively innocent shooter who was encouraged and maybe even under duress made to shoot a victim by a second party. The court summed up, and this is at page 12 of the reply brief, The fact that the sister was acquitted is of no comfort to Appellant because each acted under different circumstances. This shows that the complete language of the rule, which requires that there be the same trial and the same evidence, indicates that if you have different evidence in the same trial, you can be convicted of different degrees of offenses. The cases cited by the California Supreme Court distinguish between natural and probable consequences and the charged and intended offenses. So that gets rid of a whole bunch of different cases by separating out natural and probable consequences. That was some difficulty for the Appellant because it requires the same sort of intent. And then number three, I'm sorry. The secondary authority. There are three different sources in California, some a decade before Appellant's trial, that indicated California law allowed for an aider and abetter to be guilty of an offense greater than that of the principal. Professor Dressler, Lefebvre, and Scott, and I can't remember the other one, three separate cited in my brief. And four, logic and common sense. The secondary authority and the California Supreme Court threw out several examples of situations where it would be ridiculous for an aider and abetter to be guilty of anything less than, I'm sorry, yes, anything less than the direct perpetrator. And so. You're about a minute over your time. Yes, I'm sorry. Unless there are any questions. No. Any questions from the panel? All right. Thank you very much. I wanted to allow you to get through your argument and then, of course, we'll give you a minute for rebuttal. Briefly, Your Honors, I did want to explain what I meant by flux. When Pace came out and made that statement, the famous statement is that time limits in whatever form are conditions of filing, the question is why didn't it overrule R-2s? Again, the bar in R-2s was the failure to raise on direct appeal an issue that could have been raised on direct appeal but was raised later. That's a time limit in some form. If California's free-flowing system is a time limit, this is a time limit, too. You've delayed the raising of an issue until some time later, which is apparently not, you know, you can characterize that as a time limit. Pace did not overrule R-2s. What's in flux is did Pace, when it appeared, apply to the California system? Now, the California system has been characterized in the interval tolling cases as a hybrid system, which means what? A combination of two different species. One species is where it's like an appellate system where there's review ascending the ladder, and this is interval time, and they impose the US Supreme Court imposed some sort of 60-day rule, which is the national average. But then you have pending time where the California courts look at all sorts of factors as to whether they're going to find the issue timely, and these factors have nothing to do with the calendar, nothing to do with any set amount of time. It has to do with equitable principles. It has to do with discretionary principles, due diligence. Now, in terms of quorum novus having a different standard, due diligence is just the other side of the coin of substantial delay. If the Petitioner doesn't act with due diligence, he has engaged in substantial delay. There's no difference between quorum novus and habeas. And if Ramirez v. Yates is correct, then Bonner is wrong. Now... Thank you, counsel. You've expired your time, so thank you. Thank you, Your Honor. Unless there are questions in the back. All right. Thank you very much, both of you. I'm sorry to impose the time limits, but we do have a full calendar, and I think your case is well argued and presented.
judges: Mills, Wallace, Thomas